IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| OLGA ALCANTARA,<br>　　　　*Plaintiff*, | § | |
| | § | |
| | § | |
| **v.** | § | 3:25-CV-00438-DC-RCG |
| | § | |
| CHIEF PETER PACILLAS; CITY | § | |
| OF EL PASO, TEXAS; OFFICER | § | |
| JOSE RIVAS; CITY ATTORNEY | § | |
| KARLA NIEMAN; CITY OF | § | |
| SOCORRO, TEXAS; EL PASO | § | |
| HEALTHCARE SYSTEM, LTD.; | § | |
| TIRR MEMORIAL HERMANN | § | |
| HOSPITAL; HOUSTON | § | |
| METHODIST HOSPITAL; | § | |
| NEURORESTORATIVE EL PASO; | § | |
| CARLOS RAMIREZ, JR.; JESSICA | § | |
| MENDEZ; FLORES MENDEZ P.C.; | § | |
| TEXAS DEPARTMENT OF | § | |
| FAMILY AND PROTECTIVE | § | |
| SERVICES; HON. EDUARDO | § | |
| GAMBOA; HON. DAVID C. | § | |
| GUADERRAMA; THOMAS | § | |
| EDWARD BOSWORTH; | § | |
| BOSWORTH DEANGELO, LLC; | § | |
| DILLON BRUCE NORTON; D.B. | § | |
| NORTON, PLLC; BRUCE LEE | § | |
| GOMEZ; MANSOURATY GOMEZ | § | |
| PLLC; and RAQUEL LAURETANO, | § | |
| 　　　　*Defendants*. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Plaintiff Olga Alcantara's Amended Complaint and her Motion to Proceed *In Forma Pauperis*. (Docs. 5, 15).[1] This case is before the undersigned through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration, Plaintiff Olga Alcantara's Motion to Proceed *In Forma Pauperis* is **GRANTED**. (Doc. 15). Further, the Court **RECOMMENDS** that Plaintiff Olga Alcantara's claims be **DISMISSED**.

---

1. All page number citations are to CM/ECF generated pagination unless otherwise noted.

## I.    BACKGROUND

In her Amended Complaint, Plaintiff Olga Alcantara ("Plaintiff") sues multiple public and private actors including a state judge, a federal judge, municipal entities and officers, state authorities, several hospitals, attorneys, and court-appointed officers arising from events surrounding guardianship proceedings and law enforcement and medical encounters involving her and her family. (Doc. 5). In short, Plaintiff alleges Defendants conspired to violate her constitutional rights through the initiation and prosecution of guardianship and protective services actions, the handling of certain medical and mental health treatment, and the handling of police investigations and reports. *Id.* at 19–20. For relief, Plaintiff seeks compensatory and punitive damages and declaratory and injunctive relief directed at what Plaintiff characterizes as past and ongoing conduct she attributes to the Defendants. *Id.* at 21–22.

## II.    DISCUSSION

### A.  Motion to Proceed *In Forma Pauperis*

On October 1, 2025, Plaintiff Olga Alcantara filed a Motion to Proceed *In Forma Pauperis* ("IFP") contemporaneously with a proposed complaint. (Docs. 1, 1-1). The Court denied that Motion through an October 5, 2025, Text Order and directed Plaintiff either to pay the filing fee or to submit a completed IFP application by October 20, 2025. On October 20, 2025, Plaintiff paid the filing fee and filed her Complaint and Amended Complaint. (Docs. 3, 5). Because the filing fee was paid, the case proceeded as a paid civil action. (Doc. 3). The Court later extended Plaintiff's time to effect service and the Clerk issued summons at her request. (Doc. 13).

On March 25, 2026, Plaintiff filed a new Motion to Proceed IFP. (Doc. 15). Unlike the usual situation in which a plaintiff seeks IFP status to commence a civil action without prepaying

2

fees, Plaintiff here has already paid the filing fee. (*See* Docs. 3, 6). Plaintiff's current Motion is best understood as seeking IFP status for purposes of shifting the cost and responsibility of service of process to the United States Marshals Service. *See* 28 U.S.C. § 1915(d).

After reviewing Plaintiff's application to proceed IFP, the Court finds Plaintiff does not presently have the means to bear the costs associated with service of process. (Doc. 15). Although Plaintiff has already paid the civil filing fee and therefore does not require IFP status to maintain this lawsuit, given Plaintiff's limited resources, the Court concludes that her Motion to Proceed IFP should be granted for purposes of shifting the cost and responsibility of service of process to the United States Marshals Service. 28 U.S.C. § 1915(d). Accordingly, Plaintiff's Motion to Proceed IFP is **GRANTED**. (Doc. 15).

### B. Section 1915 Review of Amended Complaint

Pursuant to 28 U.S.C. § 1915(e)(2)(B), this Court is authorized to "dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A complaint is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)).

To screen complaints for failure to state a claim, courts employ the standard for a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must

contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Likewise, threadbare recitals of a cause of action's elements supported by conclusory statements will not survive a motion to dismiss. *Id.* Factual allegations must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

After reviewing Plaintiff's Amended Complaint and construing it liberally in light of her pro se status, the Court concludes that Plaintiff's claims against Defendants the City of El Paso, Texas and the El Paso Police Department; Chief Peter Pacillas; Officer Jose Rivas a/k/a Jose Rios; City Attorney Karla Nieman; the City of Socorro, Texas; Officers Acosta, Bustamante, Gonzalez, Sosa, Sgt. Benavidez, Officer Israel Rodriguez, and Internal Affairs Officer Denise Holguin, in their individual capacities[2]; El Paso Healthcare System, LTD d/b/a Del Sol Medical Center; TIRR Memorial Hermann Hospital; Houston Methodist Hospital; NeuroRestorative El Paso; Carlos Ramirez Jr.; Jessica Mendez and Flores Mendez P.C.; the Texas Health & Human

---

2. Although the caption of the Amended Complaint does not name these Defendants, page three states Plaintiff brings claims against these officers in both their official and individual capacities. (Doc. 5 at 3.) However, in the portion of the Amended Complaint that addresses these Defendants, Plaintiff alleges only that the City of Socorro acted "through these officers" and does not assert any specific causes of action against them in their individual capacities. *Id.* at 6–7. The Court therefore construes the Amended Complaint as asserting claims against these officers only in their official capacities, which are, in substance, claims against the City itself. S*ee Magda Hagan of the Fam. v. Rosales*, No. 22-CV-01065, 2023 WL 4417302, at *3 (W.D. Tex. May 25, 2023), *R. & R. adopted*, 2023 WL 3973625 (W.D. Tex. June 13, 2023) ("Claims against municipal officers in their official capacity are indistinguishable from claims against the municipality itself.").

Services Commission / Adult Protective Services (Houston Region)[3]; El Paso Probate Judge Eduardo Gamboa; United States District Judge David C. Guaderrama; Thomas Edward Bosworth and Bosworth DeAngelo, LLC; Dillon Bruce Norton and DB Norton, PLLC; Bruce Lee Gomez and Mansouraty Gomez PLLC; and Raquel Lauretano are barred by sovereign, judicial, and quasi-judicial immunity, and/or fail to state a claim upon which relief may be granted. Accordingly, those claims should not proceed past preliminary screening. Additionally, the Court finds that exercising supplemental jurisdiction over any remaining state law claims would not be appropriate.

### 1. The City of El Paso and the El Paso Police Department

Plaintiff asserts claims against the City of El Paso and the El Paso Police Department based on allegations that it "maintained and ratified" misconduct by Officer Jose Rivas a/k/a Jose Rios and related actors. (Doc. 5 at 5–6). Plaintiff contends this alleged conduct gives rise to municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id.* at 6.

As an initial matter, the El Paso Police Department is not a proper defendant. *See Morales v. Carrillo*, No. 19-CV-217, 2020 WL 3684864, at *23 (W.D. Tex. July 6, 2020), *R. & R. adopted as modified*, 2021 WL 664854 (W.D. Tex. Feb. 19, 2021). "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting FED. R. CIV. P. 17(b)). "In order for a plaintiff to sue a city department, it must enjoy a separate legal existence." *Id.* (internal quotation marks omitted). Further, "unless the true political entity has taken explicit

---

3. The caption of Plaintiff's Amended Complaint names the "Texas Department of Family and Protective Services (Adult Protective Services – El Paso Region)" as a Defendant. (Doc. 5 at 1). The body of Plaintiff's Amended Complaint, however, only refers to the "Texas Health & Human Services Commission / Adult Protective Services (Houston Region)." (Doc. 5 at 4, 14). Accordingly, the Court construes the Amended Complaint as naming the Texas Health & Human Services Commission / Adult Protective Services (Houston Region) as the proper Defendant.

steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* Finally, "[t]he plaintiff has the burden of showing that the city department has the capacity to be sued." *Pueblo v. City of El Paso*, No. 17-CV-00162, 2018 WL 7133707, at *2 (W.D. Tex. Mar. 22, 2018) (citing *Darby*, 939 F.2d at 314).

In *Kirkendall v. Grambling & Mounce, Inc.*, the "district court . . . concluded that the El Paso Police Department was not subject to suit . . . because it did not have a separate legal existence from the municipality itself." 4 F.3d 989, 1993 WL 360732, at *3 (5th Cir. Aug. 23, 1993). Further, the plaintiff "d[id] not suggest that the police department [was] a legal entity separate from the City of El Paso." *Id.* The Fifth Circuit therefore "affirm[ed] the dismissal of the El Paso Police Department from the suit because there ha[d] been no showing that the department ha[d] a legal existence separate from the City of El Paso." *Id.*

In this case, Plaintiff has not alleged and has not shown that the El Paso Police Department has a legal existence separate and apart from the City of El Paso. Further, Plaintiff has not alleged and has failed to show that the City of El Paso has taken any steps to grant the El Paso Police Department jural authority. Therefore, the Court finds that the El Paso Police Department should be dismissed from this suit.

Turning to the City of El Paso, to state a claim for municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009)). Conclusory allegations are insufficient. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996). The Fifth Circuit has clarified that, for a claim to be plausible on its face, it must contain facts that allow the court to draw the reasonable inference that the defendant

committed the alleged wrong and is liable. *See Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).

Here, Plaintiff alleges that the City of El Paso maintained a "longstanding pattern" of protecting Officer Rivas and ratifying his misconduct. (Doc. 5 at 5). However, these allegations are not supported by sufficient factual content to plausibly establish the existence of an official policy or widespread custom. *See Rivera v. City of Pasadena*, 555 F. Supp. 3d 443, 466 (S.D. Tex. 2021) (internal citations and quotations omitted) ("The plaintiffs must plead facts that link the alleged civil rights violation to [a] policymaker's acts or omissions that are so persistent and widespread as to practically have the force of law."). Here, the Amended Complaint describes a single course of conduct involving Officer Rivas, along with a general reference to another incident reported in the media. (Doc. 5 at 6). Such allegations, without more, do not demonstrate a persistent and widespread practice attributable to the City of El Paso. Plaintiff also fails to identify a final policymaker whose decisions or ratification may fairly be said to represent official municipal policy. *See id.* at 466 ("The plaintiffs must allege . . . facts that could show actual or constructive knowledge of such custom is attributable to a city policymaker."). Although the Amended Complaint references a "supervisor" and the "City Attorney's Office," it does not allege facts showing that these individuals possessed final policymaking authority or that a final policymaker affirmatively approved the alleged misconduct. (Doc. 5 at 5–6).

Plaintiff's assertions of "ratification" and "deliberate indifference" are likewise conclusory. (Doc. 5 at 6). Nor does the Amended Complaint include sufficient factual allegations showing that any municipal policy or custom was the moving force behind Plaintiff's alleged

constitutional injuries. *See id.* Accordingly, Plaintiff has also failed to state a claim against the City of El Paso.

### 2. Chief Peter Pacillas

Plaintiff next asserts claims against Chief Peter Pacillas. (Doc. 5 at 6). Plaintiff's official capacity claims against Chief Pacillas, however, are effectively claims against the City of El Paso. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent.") (citing *Monell*, 690 at n.55). For the reasons discussed above regarding municipal liability, Plaintiff has not plausibly alleged that a policy or custom of the City caused the alleged constitutional violations. Accordingly, Plaintiff has failed to state a claim against Chief Pacillas in his official capacity.

Plaintiff further alleges that Chief Pacillas, as the final policymaker for the El Paso Police Department, failed to investigate or discipline Officer Rivas and ignored citizen complaints. (Doc. 5 at 6). Plaintiff contends these omissions constitute supervisory liability and deliberate indifference under color of state law, resulting in retaliation and emotional injury. *Id.* While the Amended Complaint technically identifies Chief Pacillas as a "final policymaker," the allegations of his personal involvement are largely conclusory. *See id.* at 6. Plaintiff does not describe specific acts or decisions by Chief Pacillas that plausibly caused a constitutional violation. Allegations that he "ignored repeated complaints" and "enabled continuing retaliation" are precisely the type of "unadorned, the-defendant-unlawfully-harmed me accusation[s]" that the Court in *Iqbal* deemed insufficient to state a claim. *See Ponder v. Avalon Corr. Servs.*, No. 14-CV-336, 2016 WL 4083513, at *4 (W.D. Tex. Aug. 1, 2016) (internal citation and quotations

omitted). Accordingly, Plaintiff has failed to state a claim against Chief Pacillas in his individual capacity.

### 3. Officer Jose Rivas a/k/a Jose Rios

Plaintiff names Officer Jose Rivas a/k/a Jose Rios as a Defendant in the caption of her Amended Complaint (Doc. 5), but the pleading fails to assert any cognizable or plausible claim for relief against him. The only references to Officer Rivas concern an incident from 2018, in which he allegedly used excessive force against Plaintiff's daughter and later participated in events that are the subject of separate, pending litigation. (Doc. 5 at 5–6). Those allegations, however, are presented solely in support of Plaintiff's *Monell* theory of municipal liability against the City of El Paso rather than as an independent claim against Rivas himself. *See, e.g.*, *id.* at 6 (alleging that the City's "ratification" of Rivas's conduct "constitute[s] municipal liability under *Monell*").

Critically, the Amended Complaint does not identify any specific cause of action asserted against Officer Rivas himself, nor does it include factual allegations showing his personal involvement in the acts underlying the present case. *See id.* To the extent Plaintiff relies on the 2018 use-of-force incident, those allegations serve only as background for Plaintiff's municipal liability theory and do not supply factual matter that could support individual liability against Officer Rivas in this action. Under *Twombly* and *Iqbal*, a plaintiff must plead facts that, accepted as true, state a claim that is plausible on its face. *See Cicalese v. Univ. of Texas Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). Plaintiff's Amended Complaint falls far short of this standard with respect to Officer Rivas and therefore fails to state a claim upon which relief may be granted against him.

### 4. City Attorney Karla Nieman

Plaintiff also asserts claims against Karla Nieman in her official capacity as City Attorney for the City of El Paso for withholding evidence, blocking disclosure of records, and "protecting Officer Rivas." (Doc. 5 at 6).

Again, in a suit brought against a municipal official in her official capacity, the plaintiff must show that the municipality has a policy or custom that caused her injury. *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007); *see also Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 789 (W.D. Tex. 2016), *aff'd*, 891 F.3d 214 (5th Cir. 2018) ("A claim against a municipal official in his or her official capacity is tantamount to a suit against the municipal entity.").

Here, Plaintiff alleges that Nieman directed or ratified the City's practice of withholding evidence, blocking disclosure of internal-affairs records, and shielding Officer Rivas. (Doc. 5 at 6). These allegations, however, do not plausibly establish a policy or widespread custom of the City, nor do they include sufficient factual support showing that Nieman's actions personally caused a constitutional violation. *See Winegarner v. City of Irving Texas*, No. 24-CV-02171, 2025 WL 2608241, at *4 (N.D. Tex. Aug. 20, 2025), *R. & R. adopted*, 2025 WL 2606991 (N.D. Tex. Sept. 8, 2025) (internal citation and quotations omitted) ("Isolated unconstitutional actions by municipal employees . . . are not the persistent, often repeated, constant violations that constitute custom and policy."). Accordingly, Plaintiff has failed to state a claim for relief against Nieman in her official capacity.

### 5. The City of Socorro, Texas

Plaintiff asserts claims against the City of Socorro, Texas based on allegations that its officers refused to conduct welfare checks, relied on allegedly fabricated information, and failed to investigate Plaintiff's complaints. (Doc. 5 at 6–7). Plaintiff contends that this conduct gives rise to municipal liability under *Monell*. *Id.* at 7. As discussed above, to state a claim for

municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *See, e.g.*, *Whitley*, 726 F.3d at 649.

Here, Plaintiff fails to plausibly allege the existence of an official policy or widespread custom. The Amended Complaint describes a series of interactions between Plaintiff and responding officers but does not include sufficient factual allegations demonstrating a persistent and widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy." *See Ramirez v. Dimmit Cnty.*, No. 12-CV-305, 2014 WL 2780134, at \*8 (W.D. Tex. June 19, 2014). Plaintiff also fails to allege facts showing that a final policymaker adopted or ratified the challenged conduct. Although Plaintiff references "supervisory involvement" and an "Internal Affairs Officer" (Doc. 5 at 7), the Amended Complaint does not include factual allegations demonstrating that any such individual possessed final policymaking authority or made a deliberate decision to approve the alleged conduct. *See id.* Allegations of "ratification" and "failure to train and supervise," without supporting facts, are insufficient. The Fifth Circuit has observed that ratification "is an appropriate basis for imposing municipal liability only in '*extreme factual situations*.'" *Miller v. Texas City*, No. 18-cv-284, 2019 WL 2189262, at \*5 (S.D. Tex. May 21, 2019) (emphasis added) (quoting *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017)), *adopted by* 2019 WL 3082951 (S.D. Tex. July 15, 2019). But the sum of Plaintiff's ratification allegations is that the City, through its officers, "refused to conduct meaningful welfare checks" and that the Internal Affairs Officer "took no action." (Doc. 5 at 7). That's it. Nothing about her allegations suggests an "extreme factual situation." What's more, ratification liability must be applied with the understanding that "[p]olicymakers alone can create municipal liability, and so any violation must be causally

11

traceable to them, not just their subordinates." *Milam v. City of San Antonio*, 113 F. App'x 622, 626 (5th Cir. 2004); *see also Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001). Here, Plaintiffs allege only that subordinate officers failed to conduct meaningful welfare checks; they offer no facts showing that any municipal policymaker was responsible for—or otherwise created—the basis for municipal liability. (Doc. 5 at 7).

Accordingly, Plaintiff has failed to state a claim for municipal liability against the City of Socorro, and those claims should be dismissed.

### 6. Medical Provider Defendants

Next, Plaintiff asserts claims under § 1983 against Del Sol Medical Center, TIRR Memorial Hermann, Houston Methodist Hospital, and NeuroRestorative El Paso ("Medical Provider Defendants") based on their alleged involvement in medical treatment decisions, communications with Adult Protective Services, and conduct related to guardianship proceedings. (Doc. 5 at 7–9).

There are three elements of a § 1983 claim: "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004). Here, insofar as Plaintiff seeks to impose § 1983 liability on the Medical Provider Defendants, she proceeds against four private healthcare facilities and alleges they acted "jointly and in concert with state officials and agencies," not that they themselves are governmental officials or entities. (*See* Doc. 5 at 7–9). To hold a private actor liable under § 1983, however, the plaintiff must show that "the private citizen was a 'willful participant in joint activity with State or its agents.'" *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004) (quoting *Cinel v. Connick.*, 15 F.3d 1338, 1342 (5th Cir.

1994)). "The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Id.*

Here, Plaintiff merely alleges these Defendants "acted jointly and in concert with state officials and agencies" by, among other things, reporting concerns of medical neglect, facilitating medical transfers, restricting communications, and proceeding with treatment over Plaintiff's objections. (Doc. 5 at 7–9). But these allegations do not establish that any of the Medical Provider Defendants "exercised powers that were traditionally the exclusive prerogative of the state" or entered into an agreement with state officials to violate Plaintiff's constitutional rights. *Alfred v. Scott*, No. 9-CV-00872, 2019 WL 5388094, at *2 (W.D. La. Sept. 25, 2019), *R. & R. adopted*, 2019 WL 5388091 (W.D. La. Oct. 21, 2019). At most, the Amended Complaint alleges that these Defendants provided medical care, communicated with governmental agencies, and complied with guardianship-related processes—conduct that, even if disputed or improper, does not transform private medical providers into state actors for purposes of § 1983. *See Sonnier v. St. Martin Par. Jail*, No. 19-CV-01293, 2019 WL 6712089, at *2 (W.D. La. Nov. 13, 2019), *R. & R. adopted*, 2019 WL 6712352 (W.D. La. Dec. 9, 2019) (holding that the plaintiff's failure to allege facts showing a hospital and its staff were state actors required dismissal of § 1983 claims).

Because Plaintiff has not alleged facts sufficient to show that any of the Medical Provider Defendants acted under color of state law, she fails to state a claim under § 1983 against them. Accordingly, Plaintiff's claims against Del Sol Medical Center, TIRR Memorial Hermann, Houston Methodist Hospital, and NeuroRestorative El Paso should be dismissed

### 7. Carlos Ramirez Jr.

Plaintiff asserts claims against Carlos Ramirez Jr., alleging that he provided false information to hospitals and state agencies, initiated and benefited from guardianship proceedings, and acted in concert with various defendants to deprive Plaintiff of her constitutional rights. (Doc. 5 at 17–18). Plaintiff asserts that this conduct gives rise to liability under § 1983, as well as under related state law causes of action.

As previously discussed, to state a claim under § 1983, a plaintiff must allege that the defendant acted "under color of state law." *See Larpenter*, 369 F.3d at 482. Private individuals are generally not state actors and are therefore not subject to liability under § 1983. *Moody v. Farrell*, 868 F.3d 348, 352 (5th Cir. 2017). To maintain a claim that a private citizen is liable under § 1983 on the basis of joint action with state officials, a plaintiff "must allege facts showing an agreement or meeting of the minds between the state actor and the private actor to engage in a conspiracy to deprive the plaintiff of a constitutional right, and that the private actor was a willing participant in joint activity with the state or its agents." *Pikaluk v. Horseshoe Entm't, L.P.*, 810 F. App'x 243, 247 (5th Cir. 2020) (quoting *Polacek v. Kemper Cty.*, 739 F. Supp. 2d 948, 952 (S.D. Miss. 2010)).

Here, Plaintiff's allegations against Carlos Ramirez Jr. do not plausibly establish that he acted under color of state law. The Amended Complaint alleges that he provided false or misleading information to medical providers and state agencies, pursued guardianship proceedings, and benefited from the resulting decisions. (Doc. 5 at 17–18). However, such conduct—without more—reflects the use of state processes, not action attributable to the State itself. *See Williams v. E. Baton Rouge Par. Sheriff's Off.*, No. 09-148, 2010 WL 3894230, at *3 (M.D. La. Sept. 29, 2010) ("[T]he Supreme Court noted that a private party who misused or even abused the state process did not engage in state action for § 1983 purposes.") Plaintiff further

asserts that Carlos Ramirez Jr. "conspired" and acted "in concert" with state officials. (Doc. 5 at 18). These assertions, however, are conclusory and lack the factual specificity required to state a plausible claim. The Amended Complaint does not allege particular facts showing the existence of an agreement between Carlos Ramirez Jr. and any state actor to violate Plaintiff's constitutional rights. Accordingly, Plaintiff has failed to state a claim under § 1983 against Carlos Ramirez Jr., and those claims should be dismissed.

### 8.  Jessica Mendez and Flores Mendez P.C.

Plaintiff's allegations against Jessica Mendez and Flores Mendez P.C. similarly fail to state a cognizable claim upon which relief may be granted. Although Plaintiff alleges that Mendez coordinated with court officials and other actors, the conduct described consists of legal representation, communications regarding litigation and guardianship proceedings, and litigation strategy on behalf of a client. (Doc. 5 at 9–11). However, "[t]he law is clear that a private attorney who merely represents a client in a civil proceeding . . . does not act under the color of state law." *Dolenz v. Akin*, No 95-CV-1605, 1997 WL 21388, at \*3 (N.D. Tex. Jan. 14, 1997) (collecting cases), *aff'd*, 129 F.3d 612 (5th Cir. 1997) (unpublished) (per curiam).

Further, Plaintiff's attempt to show Mendez acted under color of state law by invoking a purported "conspiracy" or "joint action" is purely conclusory and unsupported by specific factual allegations demonstrating any agreement or concerted effort with state actors, as required to sustain a § 1983 conspiracy claim. *See Walzier v. McMullen*, Civ. A. 06–2361, 2006 WL 3152137, \*5 (S.D.Tex. Nov.1, 2006) ("To establish a § 1983 cause of action based on conspiracy, plaintiff must do more than make blanket allegations of conspiracy."). Because Plaintiff has not pleaded facts establishing that Mendez or Flores Mendez P.C. acted under color

of state law or entered into a concrete agreement with state actors, she has failed to state a § 1983 claim against them.

### 9. The Texas Department of Family and Protective Services (Adult Protective Services – Houston Region)

Plaintiff names the Texas Health and Human Services Commission ("HHSC"), through its Adult Protective Services ("APS"), Houston Division, alleging APS accepted unverified and retaliatory allegations of medical neglect, mischaracterized her objections to a proposed brain surgery as neglect, and relied on those allegations to support an *ex parte* guardianship petition in Harris County. (Doc. 5 at 14). She asserts that APS's actions caused the performance of an unwanted brain surgery and ongoing deprivation of her parental and familial rights. *Id.*

To the extent Plaintiff seeks monetary damages from HHSC and/or APS as a state agency, such claims are barred by the Eleventh Amendment. *See Byrum v. City of Plano*, No. 11CV60, 2011 WL 2214004, at *1 (E.D. Tex. May 10, 2011) (citing *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998)), *R. & R. adopted*, 2011 WL 2224435 (E.D. Tex. June 7, 2011) ("The Eleventh Amendment bars claims against a state [or a state agency] brought pursuant to 42 U.S.C. § 1983."). And because Plaintiff also alleges ongoing harm from the APS neglect finding and seeks prospective injunctive and declaratory relief to remedy continuing constitutional violations (Doc. 5 at 15), it is worth noting the *Ex parte Young* exception does not apply to state agencies. The Fifth Circuit made this point clear: "The *Ex parte Young* exception . . . does not apply to suits against state agencies; this narrow exception is limited to certain claims against state employees acting in their official capacities." *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 769 (5th Cir. 2015). Accordingly, Plaintiff's claims against HHSC and APS, whether for monetary, declaratory, or injunctive relief, are barred by sovereign immunity and should be dismissed.

16

### 10. Judge Eduardo Gamboa

Plaintiff brings claims against El Paso Probate Judge Eduardo Gamboa in his official capacity, seeking prospective declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201–2202 to "remedy ongoing constitutional effects of prior orders." (Doc. 5 at 12).

"The federal civil rights laws do not provide a vehicle . . . to sanction the conduct of state court judges for actions taken within the scope of their judicial authority." *Bogney v. Jones*, 904 F.2d 272, 274 (5th Cir. 1990). The doctrine of absolute judicial immunity protects judges from liability for all actions taken in their judicial capacities, so long as they do not act in a clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). That said, absolute judicial immunity does not apply in certain limited circumstances. *See Davis v. Tarrant County, Texas*, 565 F.3d 214, 221 (5th Cir. 2009). In particular, judges are not immune when the plaintiff seeks prospective relief for an allegedly ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123, 155–56 (1908). Accordingly, the viability of Plaintiff's claims turns on whether they satisfy the requirements of *Ex parte Young*.

*Ex parte Young* permits a lawsuit against state officials in their official capacities to proceed if the plaintiff meets a three-factor test. "Such a suit must: (1) be brought against state officers acting in their official capacities; (2) seek prospective relief that will redress ongoing conduct; and (3) allege a violation of federal law." *Tex Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 507 (5th Cir. 2021); *see also Bowling v. Roach*, 816 F. App'x 901, 903 (5th Cir. 2020). Here, Plaintiff satisfies the first requirement because Judge Gamboa is a state officer who has acted in his official capacity. However, Plaintiff fails to satisfy the remaining requirements.

17

As to the second factor, Plaintiff characterizes her requested relief as prospective, but her allegations concern only past judicial rulings in her probate proceeding. *See Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) (observing that "the relief sought must be declaratory or injunctive in nature and prospective in effect"). On one hand, Plaintiff argues this case involves ongoing constitutional effects that continue to impair her access to the court and her familial association rights, and on the other hand, her allegations against Judge Gamboa concern only past judicial decisions in her probate proceeding rather than any clearly identified, ongoing course of unconstitutional conduct. (*See* Doc. 5 at 12). Despite Plaintiff's characterization of her relief as declaratory and prospective, Judge Gamboa's past actions do not suffice to demonstrate an ongoing violation of Plaintiff's civil rights. And despite asking for declaratory relief, Plaintiff's lawsuit alleges a past violation of her alleged federal rights. *See McSmith v. Engelhardt*, 2006 WL 3478162, at *3 (E.D. La. Nov. 28, 2006) ("Neither damages, injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments."). Because Plaintiff's request for declaratory relief is actually retrospective in nature, she has not met the second *Ex parte Young* factor.

Finally, Plaintiff has not made a strong enough showing that she can meet the third factor. In the absence of a "a colorable constitutional claim," Plaintiff cannot meet the third *Ex parte Young* factor. *Hall v. Tex. Comm'n on L. Enf't*, 685 F. App'x 337, 341 (5th Cir. 2017). Accordingly, Plaintiff's claims do not fall within the narrow *Ex parte Young* exception and should be dismissed.

### 11. Judge David Guaderrama

Plaintiff also asserts claims against United States District Judge David Guaderrama in his official capacity, seeking prospective declaratory and injunctive relief under *Bivens v. Six*

*Unknown Named Agents*, 403 U.S. 388 (1971), and 28 U.S.C. §§ 2201–2202, based on his judicial actions in *Alcantara v. Jasso*, No. EP-18-CV-00298-DCG (W.D. Tex.). (Doc. 5 at 12).

As a preliminary matter, Plaintiff's Amended Complaint expressly states she is suing Judge Guaderrama in his official capacity only (Doc. 5 at 12), but *Bivens* "provides a cause of action only against government officers in their *individual* capacities." *Affiliated Pro. Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999) (emphasis added). Even affording the Amended Complaint a liberal construction to include an individual capacity claim, Plaintiff's *Bivens* theory still fails because her allegations concern actions Judge Guaderrama took in his judicial capacity. *See Lash v. Zainey*, No. CV 21-0173, 2021 WL 2143762, at *1 (E.D. La. Mar. 4, 2021), *R. & R. adopted*, 2021 WL 2142521 (E.D. La. May 26, 2021) (citing *Butcher v. Guthrie*, 332 F. App'x 161, 162 (5th Cir. 2009) ("[F]ederal judges are immune under *Bivens* for their judicial acts.")). It is also worth noting that although Plaintiff stipulates she is not seeking monetary damages, judicial immunity applies to claims for injunctive relief as well as claims for monetary damages. *Kipen v. Lawson*, 57 F. App'x 691 (6th Cir. 2003); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). Thus, Plaintiff cannot pursue relief against Judge Guaderrama in his individual capacity based on these allegations.

Plaintiff's official capacity claims are likewise precluded by sovereign immunity. Under the doctrine of sovereign immunity, the United States cannot be sued unless it waives its sovereign immunity regarding that particular claim. *Williamson v. U.S. Dept. of Agric.*, 815 F.2d 368, 373 (5th Cir. 1987). A lawsuit against a federal judge in his official capacity is a lawsuit against the United States itself. *Okorie v. Starrett*, No. 24-CV-00141, 2025 WL 791007, at *2 (S.D. Miss. Mar. 12, 2025) (citing *Unimex, Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 594 F.2d 1060, 1062 (5th Cir. 1979)). "The party bringing an action against the United States bears the

19

burden of demonstrating an unequivocal waiver of immunity." *Peoples Nat'l Bank v. Off. of Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). A waiver of the federal government's sovereign immunity must be explicitly defined in statutory text, cannot be implied, and is strictly construed in favor of the government. *Lewis v. Hunt*, 492 F.3d 565, 570 (5th Cir. 2007). "The absence of such a waiver is a jurisdictional defect." *Id.* at 571 (citing *Kulawy v. United States*, 917 F.2d 729, 733 (2d Cir. 1990); *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (holding that a lack of a waiver of sovereign immunity "deprives federal courts of subject matter jurisdiction").

Although Plaintiff cites 28 U.S.C. §§ 2201–2202 to support declaratory and injunctive relief, these provisions cannot overcome absolute judicial immunity or the United States' sovereign immunity, and thus do not provide a basis to enjoin a federal judge for acts performed in his judicial capacity. *See Dugas v. United States*, No. 19-CV-302, 2019 WL 5595043, at *2 (S.D. Tex. Oct. 30, 2019). In this case, Plaintiff does not complain of any actions taken by Judge Guaderrama that were nonjudicial in nature. Because Plaintiff attacks rulings Judge Guaderrama made within his judicial jurisdiction, he is immune from suit seeking either monetary or injunctive relief. *See id.* Therefore, the claims against Judge Guaderrama are subject to dismissal because he is entitled to both sovereign and judicial immunity, without exception.

### 12. Thomas Edward Bosworth and Bosworth DeAngelo, LLC

Plaintiff's allegations against Thomas Edward Bosworth and Bosworth DeAngelo, LLC arise from their representation of Plaintiff in guardianship proceedings. (Doc. 5 at 13). However, private attorneys do not act under color of state law for purposes of § 1983. *See Bell v. McDaniel*, No. 01-CV-1466-D, 2001 WL 1335868, at *1 (N.D. Tex. Oct. 25, 2001) (internal

20

citation omitted) ("Private attorneys do not act "under color of state law" and are not liable under 42 U.S.C. § 1983."). Although Plaintiff attempts to characterize their conduct as part of a conspiracy with state actors, her allegations are conclusory and fail to plausibly allege an agreement or joint action sufficient to satisfy the "under color of law" requirement. *See Walzier*, 2006 WL 3152137, *5. At most, Plaintiff alleges delay, inaction, and breach of professional duties (Doc. 5 at 13), which may constitute negligence or malpractice but do not rise to the level of a constitutional violation. *Taylor v. Poffinbarger*, No. H-20-2428, 2021 WL 356831, at *7 (S.D. Tex. Feb. 2, 2021) ("Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation."). Accordingly, Plaintiff has failed to state a claim upon which relief may be granted.

### 13. Dillon Bruce Norton and D.B. Norton, PLLC

Plaintiff's allegations against Norton arise from his role as privately retained counsel in guardianship proceedings. (Doc. 5 at 15). However, a private attorney does not act under color of state law merely by virtue of holding a state-issued license or representing a client in court. *See Bell*, 2001 WL 1335868, at *1. Although Plaintiff asserts that Norton acted "under color of law" and participated in a conspiracy with state actors, these assertions are conclusory and unsupported by factual allegations sufficient to establish joint action or a meeting of the minds. *See Walzier*, 2006 WL 3152137, *5. At most, Plaintiff alleges that Norton failed to timely file pleadings and adequately advocate on her behalf. Such allegations, even if true, do not rise to the level of a constitutional violation. *See Poffinbarger*, 2021 WL 356831, at *7. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted.

### 14. Bruce Lee Gomez and Mansouraty Gomez PLLC

21

Plaintiff alleges Defendant Bruce Lee Gomez was appointed as Guardian ad Litem for her daughter in El Paso County Probate Court No. 2, and that he ignored evidence of the proposed guardian's unfitness, disregarded Plaintiff's complaints and her daughter's expressed wishes, and proceeded with a status hearing in Plaintiff's absence. (Doc. 5 at 15 –16). She claims these omissions violated her and her daughter's constitutional rights and seeks damages under § 1983. *Id.* at 16.

Guardians ad litem appointed to assist the court in making judicial determinations are generally entitled to quasi-judicial immunity for acts within the scope of their appointment. *See Coffelt v. Davis*, No. 16-CV-933, 2016 WL 7339950, at *2 (N.D. Tex. Dec. 14, 2016) (internal citation omitted) ("The ad litem is an integral part of the judicial process ad is entitled to derived judicial immunity."). In addition, an ad litem is not a state actor for purposes of § 1983, *Id.*, and only state actors can be held liable under § 1983. *DeVilbiss v. Jackson*, No. 20-CV-00878, 2020 WL 4586162, at *2 (W.D. Tex. Aug. 10, 2020)

Here, Plaintiff's allegations against Gomez concern his investigations, recommendations, handling of communications, and participation in court hearings, all of which are quasi-judicial functions performed on behalf of the probate court. (Doc. 5 at 16). The Court therefore concludes Gomez is entitled to absolute quasi-judicial immunity from damages for the conduct alleged. Further, to the extent Plaintiff seeks prospective declaratory or injunctive relief, she fails to state a plausible claim. For such relief, plaintiffs must show an ongoing violation of federal law, not a past injury or speculative future harm. *Jordan v. City of Dallas*, No. 22-CV-01173, 2025 WL 1869593, at *6 (N.D. Tex. July 3, 2025). Here, however, Plaintiff does not allege Gomez currently exercises any authority over her or her daughter, nor does she identify any ongoing violation of federal law that could be redressed by prospective relief. *See NiGen*

22

*Biotech*, *LLC. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("[A] complaint must allege that the defendant is violating federal law, not simply that the defendant has done so."). Rather, her allegations concern past conduct and assert only in a conclusory fashion that Gomez "caused continuing harm." (Doc. 5 at 16). Such allegations are insufficient to support a claim for relief.

### 15. Raquel Lauretano

Lastly, Plaintiff alleges Defendant Raquel Lauretano, a licensed clinical social worker and court investigator for Judge Gamboa, failed to act on her complaints, failed to ensure promised phone calls occurred, and omitted her daughter's stated wishes from reports to the probate court, thereby depriving Plaintiff of "family unity" and "directly caus[ing] continuing harm to Plaintiff's constitutional rights." (Doc. 5 at 16–17).

Like a guardian ad litem, a court-appointed investigator who gathers information and reports to the court performs a function closely associated with the judicial process and is entitled to quasi-judicial immunity for acts within the scope of that appointment. *See Brown v. Harris Cnty. Hous. Auth.*, No. CV 15-2847, 2018 WL 3080880, at *6 (S.D. Tex. Jan. 11, 2018), *R. & R. adopted*, 2018 WL 1250445 (S.D. Tex. Mar. 12, 2018) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) ("The Supreme Court has expanded absolute immunity to 'certain others who perform functions closely associated with the judicial process.'")); *see also Dudley v. Johnson*, No. CIV.A. 95-1755, 1995 WL 710916, at *1 (E.D. La. Nov. 30, 1995), *aff'd*, 99 F.3d 1134 (5th Cir. 1996) (internal citation omitted) ("Absolute quasi-judicial immunity protects officials who, although not judges, perform functions that are "intimately associated" with the judicial process or who act in accordance with a judge's direct orders."). Plaintiff's allegations describe Lauretano's conduct in that investigative and reporting capacity, and expressly state that she works "for Judge Gamboa." (Doc. 5 at 16–17). For the same reasons discussed above,

Lauretano is immune from damages for those actions. Plaintiff also fails to allege any ongoing role or authority that would support prospective injunctive relief. Thus, Plaintiff's allegations against Lauretano, even if accepted as true, are both barred by quasi-judicial immunity and, independently, fail to state a cognizable claim for relief under § 1983.

## C.  Plaintiff's State Law Claims

In addition to her federal claims under § 1983, Plaintiff also asserts state-law claims against Defendant Carlos Ramirez Jr. (Doc. 5 at 20). Having determined all of Plaintiff's federal claims should be dismissed, the Court finds exercising supplemental jurisdiction over the remaining state law claims not appropriate.

"Federal courts are courts of limited jurisdiction." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A federal court can only entertain cases that fall within its original jurisdiction. There are two avenues for original jurisdiction: federal question and diversity of citizenship. As provided in Plaintiff's Amended Complaint, federal question jurisdiction applies when the action arises under the United States Constitution or federal statutory law. 28 U.S.C. § 1331. Diversity of citizenship is implicated when a citizen of one state sues a citizen of another state and the amount in controversy is more than $75,000. *Id.* § 1332. The party asserting jurisdiction has the burden of establishing it. *McMahon v. Fenves*, 946 F.3d 266, 279 (5th Cir. 2020). Here, because Plaintiff chose to file her lawsuit in federal court, she bears the burden of demonstrating that federal jurisdiction exists.

When a plaintiff brings multiple claims and some are within the court's original jurisdiction and some are not, supplemental jurisdiction may apply. A court has supplemental jurisdiction over state law claims that "are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) (citing 28 U.S.C. § 1367(a)). Because supplemental claims are not within the Court's original jurisdiction, when the Court dismisses all claims over which it has original jurisdiction, it has broad discretion to decline supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Burkett v. City of El Paso*, 513 F. Supp. 2d 800, 823 (W.D. Tex. 2007) ("When a district court has dismissed all federal claims from a cause before trial, the general rule in our Circuit directs district courts to decline to exercise supplemental jurisdiction over supplemental state law claims.").

Here, Plaintiff asserts this "Court has jurisdiction over this action under 28 U.S.C. § 1331 and § 1343(a)(3) because it arises under the Constitution and the laws of the United States, including 42 U.S.C § 1983." (Doc. 5 at 5). For the reasons explained above, the Court recommends dismissal of these claims. Thus, only Plaintiff's state law claims remain, and the Court may exercise its discretion and decline supplemental jurisdiction over Plaintiff's remaining state law claims.

Accordingly, the undersigned **RECOMMENDS** the District Judge **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law claims.

### D. Leave to Amend

Pursuant to Fifth Circuit precedent, generally "a pro se litigant should be offered an opportunity to amend her complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 768–69 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). But, "[g]ranting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" (quoting *Bazrowx*, 136 F.3d at 1054).

25

Here, the Court finds, based upon a review of the Amended Complaint, as well as the applicable law, that any attempt by Plaintiff to amend would be fruitless—she has pleaded her best case as the operative Pleading is already an Amended Complaint and she cannot cure the Complaint's defects through further amendment. Accordingly, the Court need not provide her with an opportunity to amend prior to the partial dismissal of her Amended Complaint. Thus, it is **RECOMMENDED** that leave to amend be **DENIED**.

### III.   RECOMMENDATION

As discussed above, Plaintiff's Motion to Proceed *In Forma Pauperis*, is **GRANTED**. (Doc. 15).

Additionally, the Court **RECOMMENDS** that Plaintiff's claims be **DISMISSED**, as her claims against Defendants the City of El Paso, Texas and the El Paso Police Department; Chief Peter Pacillas; Officer Jose Rivas a/k/a Jose Rios; City Attorney Karla Nieman; the City of Socorro, Texas; Officers Acosta, Bustamante, Gonzalez, Sosa, Sgt. Benavidez, Officer Israel Rodriguez, and Internal Affairs Officer Denise Holguin, in their individual capacities; El Paso Healthcare System, LTD d/b/a Del Sol Medical Center; TIRR Memorial Hermann Hospital; Houston Methodist Hospital; NeuroRestorative El Paso; Carlos Ramirez Jr.; Jessica Mendez and Flores Mendez P.C.; the Texas Health & Human Services Commission / Adult Protective Services (Houston Region); El Paso Probate Judge Eduardo Gamboa; United States District Judge David C. Guaderrama; Thomas Edward Bosworth and Bosworth DeAngelo, LLC; Dillon Bruce Norton and DB Norton, PLLC; Bruce Lee Gomez and Mansouraty Gomez PLLC; and Raquel Lauretano are barred by sovereign, judicial, and quasi-judicial immunity, and/or fail to state a claim upon which relief may be granted.

The Court **FURTHER RECOMMENDS** that Plaintiff's claims against the El Paso Police Department; the Texas Health & Human Services Commission / Adult Protective Services (Houston Region); Judge Eduardo Gamboa; Judge David C. Guaderrama; Bruce Lee Gomez and Mansouraty Gomez PLLC; and Raquel Lauretano be **DISMISSED WITH PREJUDICE** because those Defendants are immune from suit, but that Plaintiff's claims against Defendants the City of El Paso, Texas; Chief Peter Pacillas; the City of Socorro, Texas; Officer Jose Rivas a/k/a Jose Rios; City Attorney Karla Nieman; Officers Acosta, Bustamante, Gonzalez, Sosa, Sgt. Benavidez, Officer Israel Rodriguez, and Internal Affairs Officer Denise Holguin, in their individual capacities; El Paso Healthcare System, LTD d/b/a Del Sol Medical Center; TIRR Memorial Hermann Hospital; Houston Methodist Hospital; NeuroRestorative El Paso; Carlos Ramirez Jr.; Jessica Mendez and Flores Mendez P.C.; Thomas Edward Bosworth and Bosworth DeAngelo, LLC; and Dillon Bruce Norton and DB Norton, PLLC be **DISMISSED WITHOUT PREJUDICE**.

It is **FURTHER RECOMMENED** that the District Judge **DECLINE** to exercise supplemental jurisdiction over Plaintiff's state law claims.

It is **FURTHER RECOMMENDED** that leave to amend be **DENIED**.

It is **FURTHER RECOMMENDED** that the Court **CERTIFY**, pursuant to 28 U.S.C § 1915(a)(3), that an IFP appeal of the dismissal would not be taken in good faith.

Finally, the Court **DIRECTS** the Clerk of Court to send Olga Alcantara a copy of this Order via certified mail, return receipt requested.

SIGNED this 13th day of April, 2026.

RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

28

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

29